# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CRIMINAL CASE NO. 1:12cr62

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff-Appellee, ) | |
| ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| CHRISTOPHER G. PLEMMONS, ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendant's appeal from the Judgment entered by the Magistrate Judge on June 13, 2012. For the reasons stated below, the Judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

For conduct that occurred on March 16, 2012, the Defendant received five citations from United States Forest Service Officer Wade Keener ("Officer Keener") charging him with violations for possession of marijuana, possession of drug paraphernalia, unlawful possession of prescription pills (Hydrocodone), possession of cocaine, and littering. On June 13, 2012, the Defendant appeared before United States Magistrate Judge Dennis Howell

for a guilty plea pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The Defendant was represented by counsel at this hearing. In exchange for Defendant's plea of guilty to the charge of possession of cocaine, the Government agreed to dismiss all the other counts. [Transcript, Doc. 6 at 3].

At the plea hearing, Officer Keener provided the factual basis on behalf of the Government. Specifically, Officer Keener informed the Court that he had encountered the Defendant and three others while they were camping in the Pisgah National Forest. During that encounter, the Defendant admitted to the possession of crushed Hydrocodone pills that he and the campers were consuming by sniffing. The Defendant also admitted to the possession of cocaine and marijuana. Officer Keener stated that a subsequent lab analysis verified the substance in question as 0.3 grams of cocaine. [Id. at 8-10].

The Court also considered evidence presented by the Defendant regarding the offense in question. The Defendant argued that he had been in possession of cocaine in order to treat a painful dental condition. [Id. at 23]. The Defendant conceded, however, that this treatment had not been recommended by a dentist but rather had been suggested by someone who had given him the cocaine. [Id. at 24]. The Defendant presented dental x-

rays in order to demonstrate that he had an impacted wisdom tooth, as well as the testimony of his mother, who confirmed the existence of his dental condition. [Id. at 20]. The Defendant's mother also testified that the Defendant resides with her and other members of their family; that she and the Defendant are the only members of the family who are employed full-time; and that if the Defendant is incarcerated, he would likely lose his job and pursuant to company policy would not be re-hired. [Id. at 12-14]. Additionally, the parties presented evidence demonstrating the Defendant's lack of a criminal history. [Id. at 10].

After accepting the Defendant's guilty plea and considering the arguments of counsel, the Court advised the parties that it generally found a sentence of 30 days' imprisonment to be appropriate for offenses of this nature:

> I've been here almost eight years. After I'd been here about six months, I noticed that there was a lot -- what I considered a lot of meth and cocaine in the United States forest lands, and people were -- defendants were being allowed to pay a collateral. I mean, I had come from a lot of experience in state court and I knew that possession of any methamphetamine and possession of cocaine in state court, that's a felony. But I also knew that a lot of people with no criminal record would usually get probation. . . . [B]ut I knew it couldn't go on. Or I didn't think it should go on the way it was. There was just too much. People were

going up on the Parkway and going into the park service, going into the United States Forest Service lands and they were using that as a place to use drugs. And that's not the place to do that. That's for the taxpayers to go on vacation and relax and have a good time and go with their family and not be around folks using drugs of that nature.

And I consulted with -- I'll just give you the history. I consulted with a gentleman who had worked in the Reagan administration, James Q. Wilson. He was a noted expert in the field of crime and punishment. And then I consulted with a professor up at Appalachian [State University], Dr. Daniel Murphy. And Dr. Murphy came from a little bit different standpoint. He has taught -- he's a tenured professor up at Appalachian, but at one time Professor Murphy did five years for a marijuana trafficking charge in federal court.

So I thought that getting the opinions of both of those folks, I'd get both sides of an issue. And it was very interesting because I never told either one of them that I was talking to the other. But they both gave me the same answer, and the answer was, if you'll give those people what they call a quick dip, that that will do more for them than anything in this world. And by "quick dip," they meant a period of time in prison. And I said, "Well what's a quick dip to you?" And each one of them told me 30 days. And thereafter, that's what I started doing.

And it's been difficult to do because some people come in, they don't have any criminal record at all. But I've stuck with it pretty good. We don't have much meth in our federal lands and we don't have hardly any cocaine anymore. It's rare, if ever, I see a case. Where there used to be four or five on the

> calendar, there would either not be any or there may be one. So it's worked.
>
> And my question is: How do I explain to all the people that I have given 30 days to how I've not given you any? How can I explain that? It's not treating them fair. It's not treating you fair.
>
> What I'm going to do is I'm going to think about this a little bit. So we're just going to hold this open for a little while and let me mull this over. You may do a day today sitting here.
>
> \* \* \*
>
> But you're not going to get out of this without doing some time; I'll tell you that. I just don't know -- I want to think about this just a little bit.

[Id. at 27-30]. The Court then gave the Defendant an opportunity to take a drug test and informed him that if he passed, it would consider a lighter than usual sentence. [Id. at 31]. Ultimately, the Defendant declined the Court's offer to take a drug test. Following a brief recess, the Court pronounced the Defendant's sentence. In so doing, the Court referenced the factors set forth in 18 U.S.C. § 3553, noting the Defendant's cooperation with the arresting officer, his lack of criminal history, his history of employment, and his family's dependence on his income. [Id. at 32]. The Court sentenced the Defendant to a term of 30 days' imprisonment. The Court further allowed the Defendant

5

to self-report. [Id.]. The Defendant filed a timely notice of appeal on June 15, 2012. [Doc. 2].

## III. STANDARD OF REVIEW

A defendant who is sentenced by a magistrate judge is not entitled to *de novo* review by a district court. Fed. R. Crim. P. 58(g)(2)(D). "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Id. "An appeal of an otherwise final sentence imposed by a United States magistrate judge may be taken to a judge of the district court and this section shall apply . . . as though the appeal were to a court of appeals from a sentence imposed by a district court." 18 U.S.C. § 3742(h).

In the present case, the offense to which the Defendant pled guilty subjected him to a maximum term of imprisonment not to exceed six months. See 36 C.F.R. §1.3(a). As a result, the United States Sentencing Guidelines are not applicable, and the Defendant's sentence is reviewed under a "plainly unreasonable" standard. See 18 U.S.C. § 3742(a)(4); United States v. Bobadilla, No. 1:08CR31, 2008 WL 2372068, at *2 (W.D.N.C. June 6, 2008).

6

## IV. ANALYSIS

In rendering Defendant's sentence, the Magistrate Judge was required to apply the relevant factors set forth in 18 U.S.C. § 3553(a)[1] and "make an *individualized* assessment based on the facts presented." United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)). "Such individualized treatment is necessary to consider every convicted person as an individual and every case as a unique study in the human failings that

---

[1]Section 3553(a) requires the court to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed --
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentences and the sentencing range established for [the offense] ...;
(5) any pertinent policy statement[s] ...;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." United States v. Gibbs, 424 F. App'x 238, 240 (4th Cir. 2011) (citation omitted), cert. denied, 132 S.Ct. 178, 181 L.Ed.2d 88 (2011).

Moreover, the Magistrate Judge was required to "state in open court" his particular reasons in support of the chosen sentence. See 18 U.S.C. § 3553(c). "The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007).

In reviewing the Defendant's sentence, the Court first examines whether the Magistrate Judge committed a significant procedural error. See United States v. Lynn, 592 F.3d 572, 575 (4th Cir. 2010); United States v. Heath, 559 F.3d 263, 266 (4th Cir.), cert. denied, 130 S.Ct. 122, 175 L.Ed.2d 80 (2009). "Procedural errors include . . . failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." Carter, 564 F.3d at 328 (quoting Gall, 552 U.S. at 51, 128 S.Ct. at 597). Only if the Court determines that a sentence is procedurally reasonable does it move on to the second step of the analysis,

which is to determine "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Lynn, 592 F.3d at 575 (citation omitted); Carter, 564 F.3d at 328.

In the present case, the Defendant does not challenge the procedural reasonableness of his sentence, arguing only that his sentence is substantively unreasonable. Specifically, the Defendant argues that imposing a term of imprisonment was unwarranted under the circumstances and that the imposition of a fine or a term of probation would have been more appropriate. The Defendant further argues that sentencing him to the same period of time as other offenders, and thereby failing to take into account his employment and the dependence of his family on his income, resulted in an unreasonable sentence. [See Doc. 7 at 3-7].

Upon review of the record, the Court is satisfied that the Magistrate Judge did not commit any significant procedural error in determining the Defendant's sentence. The Magistrate Judge allowed each side to present evidence and to argue for the sentence that each considered appropriate. After acknowledging and responding to the arguments of counsel, the Magistrate Judge then examined the § 3553 factors and articulated a reasoned basis for rejecting these arguments and "for exercising his own legal

decisionmaking authority." See Rita, 551 U.S. at 356, 127 S.Ct. at 2468. Accordingly, the Court concludes that the sentence imposed was procedurally reasonable.

Turning now to the second step of the analysis, the Court next considers the substantive reasonableness of the sentence imposed. In so doing, the Court "must take into account the totality of the circumstances." Heath, 559 F.3d at 267 (citation omitted). Here, considering the totality of the circumstances, the Court concludes that the Defendant's sentence was substantively reasonable. The sentence imposed by the Magistrate Judge was only one sixth of the maximum authorized by law. While considering the Defendant's lack of criminal history and his employment status, the Magistrate Judge also gave due consideration to the need for the sentence imposed to reflect the seriousness of the offense (possession of controlled substance within the national forest), to promote respect for the law, and to afford deterrence to such conduct by the Defendant and others. In light of these factors, as well as the Defendant's other relevant conduct -- which included the possession of two other illegal substances in the national forest -- the sentence fashioned by the Magistrate Judge was decidedly appropriate. The sentence imposed was not plainly unreasonable and is hereby affirmed.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Judgment of the Magistrate Judge is hereby **AFFIRMED**, and the Defendant's appeal is hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that the Defendant shall be allowed to self-report when notified by the United States Marshal.

The Clerk of Court is **DIRECTED** to provide copies of this Order to counsel for the Defendant, counsel for the Government, and the United States Marshal's Service.

**IT IS SO ORDERED**.

Signed: September 22, 2012

Martin Reidinger
United States District Judge